IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 10-1245-TUC-JMR(HCE) |
| Plaintiff, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) ) | |
| Julio Rivera-Baltazar, Santos Alvarez, Jr., Guadalupe Fermin Ramirez, | ) ) ) | |
| Defendants. | ) ) ) | |

Pending before the Court is Defendant Alvarez' Motion To Suppress Statement (Doc. 32). Defendant Ramirez filed a Motion For Joinder In Motion To Suppress Statements (Doc. 39).[1] The Government filed a Response To Defense Motion To Suppress Statements (Docs. 49, 80). A hearing on the matter was held on August 23, 2010. Border Patrol Agent James Grayson (hereinafter "BPA Grayson") and Border Patrol Agent David Narrance (hereinafter "BPA Narrance") testified (hereinafter "Grayson at p. _" and "Narrance at p._") for the Government. Transcript of the August 23,2010 evidentiary hearing was ordered by the Magistrate Judge, filed on August 31, 2010 (Doc. 63), and is forwarded to the District Court

---

[1]Defendant Rivera-Baltazar filed a Motion For Joinder In Motion To Suppress Statements (Doc. 53). However, Defendant Rivera-Baltazar pleaded guilty on October 8, 2010 and is pending sentencing before the District Court on March 7, 2011 at 10:30 a.m. Consequently, Defendant Rivera-Baltazar is no longer a party to Defendant Alvarez' Motion To Suppress Statement (Doc. 32).

1  for review.

2  Defendant Alvarez' Motion To Suppress Statement, joined by Defendant Ramirez, came on for a continued hearing on October 12, 2010. Defendant Guadalupe Fermin Ramirez testified (hereinafter "Ramirez at p. _"). Transcript of the October 12, 2010 evidentiary hearing was ordered by the Magistrate Judge, filed on October 25, 2010 (Doc. 113), and is forwarded to the District Court for review.

## I. PROCEDURAL BACKGROUND

The Magistrate Judge relies upon the facts as outlined in the Magistrate Judge's prior Report and Recommendation (Doc. 102) regarding Defendants' Motion to Sever and will cite to only those facts germane to the Motion at hand.

Defendants Alvarez and Ramirez posit that statements by each were obtained without a valid waiver under *Miranda* and the statements were made involuntarily. Defendants Rivera-Baltazar, Alvarez and Ramirez are alleged to have made *Terry*-stop statements when first detained. Soon thereafter, Defendants Alvarez and Ramirez are alleged to have made post-*Miranda* statements in the field before they were transported to the Border Patrol Station. Once at the Border Patrol Station, only Defendant Ramirez made additional statements.

Defendant Alvarez' and Ramirez' Motion To Suppress Statement (Doc. 32) came on for a continued hearing on October 12, 2010. At that time, the Government conceded Defendant Alvarez' and Ramirez' Motion To Suppress Statement and stipulated that the Government in its case-in-chief, would not introduce statements made by Defendants Alvarez and Ramirez during the *Terry*-stop and post-*Miranda* in the field. (Ramirez at pp. 9-10).

## II. DEFENDANT RAMIREZ' STATEMENTS AT BORDER PATROL STATION

Defendants, after waiting for ten minutes at the Border Patrol vehicles, were transported from the rifle range, where they had been apprehended, to the Border Patrol Station, a trip which took 1½ hours. (Grayson at p. 24; Narrance at p. 100). Defendants were not questioned nor did Defendants make statements en route to the Border Patrol Station.

- 2 -

1  (Grayson at p.38). BPA Narrance fingerprinted Defendants at the Border Patrol Station.
2  (Narrance at pp, 99-100). At the Border Patrol Station, Defendants Rivera-Baltazar and
3  Alvarez did not make any statements. (*Id.*). At the Border Patrol Station, Defendant Ramirez
4  was not advised of his *Miranda* rights, reminded of his *Miranda* rights, nor asked whether
5  he remembered his *Miranda* rights, because BPA Grayson did not feel that a significant
6  amount of time had transpired from when Defendants were first advised in the field, to their
7  later arrival at the Border Patrol Station. (Grayson at p. 79). BPA Narrance testified that
8  while he was fingerprinting Defendant Ramirez, Defendant Ramirez without any
9  provocation,[2] made a statement which BPA Narrance followed up by questioning Defendant
10 Ramirez. (Narrance at pp.100-01). BPA Narrance documented this exchange in his report
11 as follows:

> While scanning the finger prints of Guadalupe Ramirez, he stated,"I will never do this again." I asked him what he meant by that. Mr. Ramirez then told me that he meant that he would never smuggle drugs again. He told me that he wanted to make some money and knew people in his neighborhood that could get him involved in drug smuggling. I asked him who his contact was, but Mr. Ramirez wouldn't tell me. He stated Julio Baltazar, Santos Alvarez, and himself were taken by truck the night before and dropped off west of the SR-86 checkpoint. This would most likely be near the village of San Pedro. They were given instructions to walk north into the hills and a man would meet them. They did this and met their contact. The contact took the three individuals to the narcotics. That night and next day, the four individuals walked the narcotics north and then east to get the illegal substance around the SR-86 U.S. Border Patrol checkpoint. Mr. Ramirez described the fourth individual as a Mexican national. Ramirez claimed that he observed this fourth individual using heroin intravenously several times along the trip. He claims that Mr. Alvarez, Mr. Baltazar, and himself would be paid after the narcotics had been picked up by the next set of smugglers. When all four individuals observed Agent Grayson and Edmison, Mr. Ramirez stated that Mr. Alvarez, Mr.

---

[2]BPA Narrance testified as follows:
Q [prosecutor]:...[W]hat he said to you, was it in response to any questioning that you had?
A [BPA Narrance]   No.
Q   Did he say those things just to you out of the blue?
A   Yes.
(Narrance at p. 100).

- 3 -

> Baltazar, and himself eventually quit running because they were exhausted from carrying the narcotics and that they didn't know where they were. He said that the fourth individual guided them on where to go. Additional [sic], Mr. Ramirez stated that Mr. Baltazar lived in his neighborhood and that they were longtime acquaintance[sic].

(Defense Exhibit 14). BPA Narrance told BPA Grayson about these statements. (Narrance at pp. 101, 118-119; Grayson at p. 60). The person responsible for completing the I-214 waiver of *Miranda* rights form was either BPA Grayson or BPA Edmison. (Narrance at pp. 121-122). BPA Narrance recalls that Defendant Ramirez signed an I-214 waiver of *Miranda* rights form, but does not recall if he signed before or after Defendant Ramirez was fingerprinted. (*Id.* at p. 122).

Defendant Ramirez testified that he was not advised of his *Miranda* rights at the Border Patrol Station. (Ramirez at p. 35). He also testified that he did not make any statements while being fingerprinted. (*Id.* at pp. 35. 46).[3] Defendant Ramirez testified that after he was fingerprinted at the Border Patrol Station, he remained unhandcuffed, was placed alone in a cell, and the cell door was left slightly ajar. (*Id.* at pp. 35-36, 47). Defendant Ramirez testified that he asked either BPA Grayson or Narrance to make a phone call and was told that only if he agreed to talk to Border Patrol would he be given a phone call. (*Id.* at p. 36). Defendant testified that the only statement he made to Border Patrol was that: "I'll never go out there again" and that "I was at the wrong place at the wrong time." (*Id.*).

Defendant Ramirez agrees that he was advised of his *Miranda* rights in English in the field; had no problem understanding his rights; and recalls that portion of his *Miranda* rights informing that he did not have to talk with Border Patrol until he had an attorney. (*Id.* at pp. 39-40). However, he sometimes forgets things and was not thinking about his rights when he spoke to Border Patrol at the Station. (*Id.* at p. 41). Defendant Ramirez denies saying anything regarding: (1) smuggling drugs; (2) needing money; (3) implicating co-Defendants;

---

[3]Defendant Ramirez later testified on cross-examination that he answered biographical questions while he was being fingerprinted. (Ramirez, p. 46).

- 4 -

1  (4) being dropped off the night before in the area to smuggle drugs; and (5) receiving
2  instructions to meet a fourth individual to guide the Defendants around the State Highway
3  86 Border Patrol checkpoint. (*Id.* at p. 51). Defendant Ramirez also denies knowing the co-
4  Defendants, although he has seen them "around...[o]n the Pascua Yaqui reservation." (*Id.* at
5  p. 58).

6  **A.     Analysis**

7  The Court finds Defendant Ramirez' account of what transpired at the Border Patrol
8  Station less than credible. It is not believable that Defendant was handcuffed when first
9  detained in the field (Grayson at pp.18-19; Narrance at pp. 87-88) but was left un-handcuffed
10 at the Border Patrol Station with a cell door ajar. It is not believable that Defendant Ramirez
11 knows Defendants Alvarez and Rivera-Baltazar only by sight, but was sitting with them near
12 bundles of marijuana on the same day and time and attempted to abscond with co-Defendants
13 when seen by Border Patrol. It is not believable that Border Patrol agents would give
14 Defendant Ramirez access to a phone *only if* he first spoke with them, if this even occurred,
15 but were satisfied by his retort that "I'll never go out there again" and that "I was at the
16 wrong place at the wrong time" and allowed him a phone call.

17 Defendant Ramirez' initial statement is strikingly similar to that attested to by BPA
18 Narrance, i.e., respectively "I'll never go out there again" *vis a vis* "I will never do this
19 again." The Court finds that this initial statement was spontaneous, unsolicited, and not
20 prompted by any questioning by BPA Narrance or other Border Patrol agents.

21 *Miranda* requires warnings when a person being interrogated is "in custody at the
22 station or otherwise deprived of his freedom of action in any significant way." *Miranda v.*
23 *Arizona,* 384 U.S. 436, 477 (1966). The *Miranda* test for "custody" does not examine
24 whether a defendant was told that he was free to leave, but rather, whether "a reasonable
25 person [would] have felt he or she was not at liberty to terminate the interrogation and leave."
26 *Thompson v. Keohane*, 516 U.S. 99, 112 (1995), *superseded on other grounds by* 25 U.S.C.
27 §2254(d). The location of an interrogation, although not necessarily dispositive, is one factor
28 to consider in determining whether a suspect is in custody. *United States v. Norris*, 428 F.3d

907, 912 (9th Cir. 2005)(*Miranda* warnings not required because defendant voluntarily accompanied officers to police station). Herein, Defendant Ramirez was first taken into custody by BPA Narrance, transported to the Border Patrol Station, and there fingerprinted by BPA Narrance. A reasonable person in these circumstances would have the distinct impression that he was not at liberty to terminate the interrogation and leave.

*Miranda* ensures that one accused is advised and understands the right to remain silent and the right to counsel. *Davis v. United States*, 512 U.S. 452, 460 (1994); *Moran v. Burbine*, 475 U.S. 412, 427 (1986). Waiver of *Miranda* can be established by either formal or express statements or implied from all the circumstances. *North Carolina v. Butler*, 441 U.S. 369, 379 (1979). The mere fact that *Miranda* warnings were given and the defendant thereafter made an uncoerced statement is insufficient to evidence a valid waiver. *Miranda*, 384 U.S. at 475. The Government must make an additional showing that the defendant understood these rights. *Colorado v. Spring*, 479 U.S. 564, 573-75 (1987).

The Government concedes that Defendants Rivera-Baltazar, Alvarez and Ramirez did not validly waive their *Miranda* rights when they were first taken into custody and that statements made at that time were not voluntary. However, Defendant Ramirez' spontaneous, unsolicited, and un-prompted statement made while in custody and being fingerprinted that he would "never do this again", is not subject to the requirements of *Miranda*. *See Cox v. Papa,* 542 F.3d 669, 676-77 (9th Cir. 2008) (it was proper to deny suppression of defendant's spontaneous statements made while in custody because "*Miranda* applies only 'where a suspect in custody is subjected to interrogation.'" (*quoting Rhode Island v. Innis,* 446 U.S. 291, 300 (1980) (emphasis omitted)).

Statements made thereafter by Defendant Ramirez to BPA Narrance's questions regarding what he was referring to and details of his and co-Defendants involvement in the instant offense required that Defendant Ramirez be advised of his *Miranda* rights. Consequently, Defendant Ramirez should have been advised anew of his *Miranda* rights. *United States v. Craighead*, 539 F.3d 1073, 1089 (9th Cir. 2008)(statement inadmissible because Miranda warnings not given prior to custodial interrogation).

- 6 -

1    BPA Narrance recalls that Defendant Ramirez signed an I-214 waiver of *Miranda* rights form, but cannot say if it was before or after he questioned Defendant Ramirez at the Border Patrol Station. If the waiver was signed *after* Defendant Ramirez was interrogated, it would stretch credulity that Defendant Ramirez knowingly, voluntarily, and intelligently waived his rights *before* giving incriminating statements. *See Colorado v. Connelly*, 479 U.S.157, 169-70 (1986); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), *overruled on other grounds by Edwards v. Arizona,* 451 U.S. 477 (1981). Regardless when such a waiver may have been signed, there is no I-214 waiver of *Miranda* form in existence to corroborate BPA Narrance's claim that Defendant Ramirez validly waived *Miranda*. The un-warned interrogation at the Border Patrol Station was systematic and detailed. When concluded, there was nothing of potentially incriminating information left for Defendant Ramirez to say.

    An express waiver of *Miranda* rights is not necessary. *Butler*, 441 U.S. at 373, 375-76 (explicit waiver not necessary to show defendant waived right to remain silent because defendant volunteered incriminating statements); *United States v. Andaverde*, 64 F.3d 1305, 1314 (9th Cir. 1995)(valid waiver properly inferred though defendant refused to sign waiver because defendant initiated interview and demonstrated clear understanding of rights by later asserting them). Waiver, however, cannot be presumed from a defendant's silence or subsequent confession, unless coupled with an understanding of the *Miranda* rights and conduct indicating a waiver. *Miranda*, 384 U.S. at 475; *Butler*, 441 U.S. at 373. Herein, the Government has conceded that *Miranda* rights given in the field were not validly waived. By extension, there is nothing to support the Government's position that statements nonetheless given at the Border Patrol Station were a result of a valid waiver of *Miranda*. Glaringly so, in light of BPA Narrance's claim that a I-214 waiver of *Miranda* form was signed by Defendant Ramirez well after *Miranda* warnings were presumably given, perhaps before or perhaps after incriminating statements were made at the Border Patrol Station. There is nothing before this Court indicating that Defendant Ramirez understood his *Miranda* rights and there is no evidence of conduct indicating a waiver. There has been nothing, however, presented to the Court that non-*Mirandized* statements and post-spontaneous statements by

1 Defendant Ramirez at the Border Patrol Station were given involuntarily. Because, as
2 discussed *supra,* at II.A, Defendant Ramirez' version of events at the Border Patrol Station
3 concerning being pressed for statements in order to make a phone call is not credible, there
4 is no evidence of promises made, coercion or other over-reaching by BPA Narrance.

5 Nor does Defendant Ramirez' reliance on *Missouri v. Seibert*, 542 U.S. 600 (2004)
6 (plurality opinion), alter the Court's conclusion. *Seibert* addressed the admissibility of a
7 post-warning confession obtained where the interrogating officer used a two-step
8 interrogation strategy, "termed 'question-first,' that called for the deliberate with-holding of
9 the *Miranda* warning until the suspect confessed, followed by a *Miranda* warning and a
10 repetition of the confession already given." *U.S. v. Williams*, 435 F.3d 1148, 1154 (9th Cir.
11 2006) (*citing Seibert*, 542 U.S. at 604). A plurality of the Supreme Court concluded that the
12 post-warning statements were inadmissible given that "the facts here, ... by any objective
13 measure reveal[ed] a police strategy adapted to undermine the *Miranda* warnings." *Seibert*,
14 542 U.S. at 616 (footnote omitted). Key for the plurality was whether the *Miranda* warning
15 was effective. To determine whether the warning was effective, "the focus is on facts apart
16 from [the interrogator's] intent that show the question-first tactic at work." *Id.* at 616-617 n.
17 6. "Because the facts in Seibert did not 'reasonably support a conclusion that the warnings
18 given could have served their purpose,' the plurality held that Seibert's postwarning
19 statements were inadmissible." *Williams*, 435 F.3d at 1156 (*quoting Seibert*, 542 U.S. at
20 617). The instant case is not remotely akin to *Seibert*.

21 **III. CONCLUSION**

22 After review of the record in this matter, the Magistrate Judge recommends that the
23 District Court permit in the Government's case-in-chief, introduction of Defendant Ramirez'
24 spontaneous, unsolicited, and unprompted statement that "I will never do this again", but
25 preclude introduction of statements made thereafter without benefit of *Miranda* warnings.
26 The latter statements can be used to impeach Defendant Ramirez should he testify. *Kansas*
27 *v. Ventris*, __ U.S. __, 129 S.Ct. 1841, 1847 (2009); *Oregon v. Hass*, 420 U.S. 714, 722-24
28 (1975); *Pollard v. Galaza*, 290 F.3d 1031, 1033, 1035-36 (9th Cir. 2002)(defendant's

- 8 -

statement taken in violation of *Miranda* admissible to impeach testimony because statement was voluntary). Should Defendant Ramirez testify, the questioning by the Government must be reasonably suggested by Defendant Ramirez' testimony. *United States v. Havens*, 446 U.S. 620, 627-28 (1980)(illegally seized t-shirt admissible to impeach defendant denying knowledge of scheme using t-shirt to smuggle cocaine because government's questions were reasonably suggested by direct examination of defendant).

## IV.    RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court:

(1)   deny as moot Defendant Rivera-Baltazar's Joinder (Doc. 53) in Defendant Alvarez' Motion to Suppress Statement (Doc. 32); and

(2)   in light of the Government's concession, deny in part and grant in part Defendant Alvarez' Motion to Suppress Statement (Doc. 32) joined by Defendant Ramirez (Doc. 39). The Motion should be denied to the extent that Defendant Ramirez seeks to suppress his statement made at the Border Patrol Station to the effect: "I will never do this again." The Motion should be granted with regard to statements: (a) conceded by the Government, including statements made by Defendants Alvarez and Ramirez in the field, which should not be permitted in the Government's case-in-chief; and (b) all statements made by Defendant Ramirez at the Border Patrol Station in response to BPA Narrance's questioning after Defendant Ramirez stated that he would "never do this again", which should not be permitted in the Government's case-in-chief.

The Court's recommendation is presumptively based upon the District Court's determination that Defendant Ramirez' trial is severed from that of Defendant Alvarez. (*See* Report and Recommendation (Doc. 102)). Should the District Court rule that Defendants Ramirez and Alvarez are to be tried jointly, then all statements made by Defendant Ramirez at the Border Patrol Station in response to BPA Narrance's questioning after Defendant Ramirez stated that he would "never do this again" should not be introduced in the

1  Government's case-in-chief.

2      Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal
3  Procedure, any party may serve and file written objections within fourteen (14) days after
4  being served a copy of this Report and Recommendation. If objections are filed, parties
5  should use the following case number: **CR 10-01245-TUC-JMR**.

6      Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver
7  of the right to review.

8      DATED this 1st day of November, 2010.

_____
Héctor C. Estrada
United States Magistrate Judge