IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,                )  | CR 10-1245-TUC-JMR(HCE) |
| Plaintiff,                )  | **REPORT & RECOMMENDATION** |
| vs.                                       )  | |
| Julio Rivera-Baltazar, Santos Alvarez, Jr.,) Guadalupe Fermin Ramirez,            )  | |
| Defendants.                )  | |

Pending before the Court is Defendant Alvarez' Motion To Suppress Evidence (Doc. 73). Defendant Ramirez filed a Motion For Joinder In Motion To Suppress Evidence (Doc. 77). Defendant Rivera-Baltazar filed a Motion For Joinder In Motion To Suppress The [sic] Evidence (Doc. 82).[1] The Government filed a Response To Defense Motion To Suppress (Doc. 85). A hearing was held on August 23, 2010 wherein Border Patrol Agent James Grayson (hereinafter "BPA Grayson") and Border Patrol Agent Davis Narrance (hereinafter "BPA Narrance") testified (hereinafter "Grayson at p. _" and "Narrance at p. _") for the Government. Transcript of the August 23, 2010 evidentiary hearing was ordered by the Magistrate Judge, filed on August 31, 2010 (Doc. 63), and is forwarded to the District Court for review. Defendant Alvarez' Motion To Suppress Evidence, joined by Defendant Ramirez, came on for a continued hearing on October 12, 2010. Defendant Ramirez testified

---

[1]Defendant Rivera-Baltazar pleaded guilty on October 8, 2010 and is pending sentencing before the District Court on March 7, 2011 at 10:30 a.m. Consequently, Defendant Rivera-Baltazar is no longer a party to Defendant Alvarez' Motion To Suppress Evidence (Doc. 73).

1 (hereinafter "Ramirez at p. _") regarding statements made at the Border Patrol Station.
2 Transcript of the October 12, 2010 evidentiary hearing was ordered by the Magistrate Judge,
3 filed on October 25, 2010 (Doc. 113), and is forwarded to the District Court for review.

4 **I. PROCEDURAL AND FACTUAL HISTORY**

5     **A.**     **Indictment**

6     Defendants are charged with: knowingly and intentionally conspiring from a time
7 unknown to May 3, 2010, at or near Three Points in the District of Arizona, to possess with
8 the intent to distribute 120 kilograms of marijuana, in violation of 21 U.S.C. §§841(a)(1) and
9 841(b)(1)(B)(vii), and 846 (Count 1); and knowingly and intentionally possessing on or
10 about May 3, 2010, at or near Three Points, Arizona, 120 kilograms of marijuana, in
11 violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(vii) (Count 2).

12     **B.**     **Factual Background**

13     On May 3, 2010, BPAs Grayson and Narrance, Border Patrol agents for 12 years and
14 3 ½ years respectively, were working at the State Highway 86 Border Patrol checkpoint
15 located west of Three Points, Arizona. (Grayson at p. 10; Narrance at pp. 84-85). BPA
16 Grayson overheard radio transmission sometime between noon and 1:00 p.m., that a vehicle
17 had been seen traveling on a dirt road that leads to a nearby rifle range. (Grayson at pp. 12,
18 14). BPAs Grayson and Edmison decided to go to the area. (*Id.* at pp. 12-13). Driving in
19 separate vehicles, they drove to the area where they believe a vehicle was seen on the dirt
20 road. (*Id.* at pp. 13, 30, 76). After parking their respective vehicles, BPA Grayson walked
21 east from his vehicle while BPA Edmison walked east between 50 and 100 yards south of
22 BPA Grayson. (*Id.* at pp. 13-14, 30-31).

23     As BPA Grayson walked east, he saw four individuals sitting on a slope under a
24 mesquite tree, approximately 50 yards from the dirt road. (*Id.* at pp. 14, 31). As he walked
25 towards them, they saw him, stood up and ran east. (*Id.* at pp. 14-15). He instructed them in
26 English and Spanish to stop. (*Id.* at pp. 15-16). As he ran after them, BPA Grayson noticed
27 several bundles, later determined to contain 120 kilograms of marijuana, under a nearby tree
28 25 to 30 feet away from where the four individuals had been sitting. (*Id.* at p. 16). Based

1  upon statements made by Defendants and footprints near the bundles, Defendants were
2  indicted for conspiracy to possess and possession of 120 kilograms of marijuana.

### C. Motion To Suppress Evidence

Defendants Alvarez and Ramirez move to suppress all evidence seized by the Government and statements obtained, as fruits of an unlawful stop, search, and seizure in violation of the Fourth Amendment. (Motion To Suppress Evidence, Doc. 73 at pp. 1, 4). Defendants allege three bases for suppression: (1) BPAs Grayson and Edmison did not have reasonable suspicion to temporarily detain Defendants once they determined that Defendants were not illegal aliens; (2) an anonymous tip that the suspicious vehicle in the area was going to pick up illegal aliens was dispelled once BPAs Grayson and Edmison determined that Defendants were not illegal aliens; (3) Defendants did not have physical indicia, such as fibers or strap marks, which would tie them to the bundles of marijuana and provide probable cause to arrest. (*Id.* at pp. 2-4). Consequently, the proper remedy "for an unconstitutional search is suppression of all the evidence, including statements which were obtained as a result of the illegal search, as 'fruit of the poisonous tree.' *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407 (1963); *United States v. Strickler*, 490 F.2d 378, 380 (9th Cir. 1974)." (*Id.* at p. 4).

On October 12, 2010, the following exchange occurred between the Court and counsel for Defendants Alvarez and Ramirez:

> THE COURT: So all defense counsel are agreeing that they have standing on the that motion to suppress the evidence, right? They've got a propriety or a – or a – some other interest in that –in those drugs out there?
> MR. RAYNOR: Well, Your Honor, we're not claiming anything regarding the drugs. And that's [sic] we're basically saying that – that we understand that that – that evidence, no matter what, is not going to be suppressed. The – the issue is not a Fourth Amendment issue relating to the search of the contraband that was found. That was out in the open. It was found not as a result of anything that was done with any of our clients.
> So it's – it's our position that the contraband is the contraband and it's – it was there, it was found, it wa – it was according to the testimony found there before there was even contact with any of the Defendants. So I think that that's a – we don't even get to that issue of – of standing, because *there's no*

- 3 -

> *claim I think even in the Fourth Amendment motion, that that's a fruit.*
> *Really the only fruit would be the statements, maybe, you know, maybe the – the – the observation of footprints, whatever. But I – I think that really, you know, those – the issues regarding the footprints we could explore during the Daubert hearing.*
> THE COURT: All right. Mr Butler, what's your position regarding the motion to suppress evidence in light of the – well, and understand it's only a report and recommendation. Judge Roll can accept it in part or in whole or reject it in part or in whole. So, it's – it's not a guarantee, but that's just my basic feeling as written in that R and R.
> MR. BUTLER: Judge, I think that what Mr. Raynor said is correct as regards the marijuana ....

(October 12, 2010 hearing at pp. 17-18).

## II.     ANALYSIS

The United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures ...." *U.S. Const. amend. IV*. It is also well-settled and established law that the Fourth Amendment protects places and items wherein a person has a reasonable expectation of privacy. *Smith v. Maryland,* 442 U.S. 735 (1979): *see United States v. Wong,* 334 F.3d 831, 839 (9th Cir. 2003). Therefore, a criminal defendant can seek to suppress evidence obtained in violation of the Fourth Amendment, only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Caymen,* 404 F.3d 1196, 1199 (9th Cir. 2005). To demonstrate that his Fourth Amendment rights were violated, a criminal defendant must establish (1) a subjective expectation of privacy and (2) an objectively reasonable expectation of privacy. *Smith,* 442 U.S. at 740; *Caymen,* 404 F.3d at 1199. Thus, a defendant charged with a crime of possession, as Defendants herein are charged, "may only claim the benefits of the exclusionary rule if [their] own Fourth Amendment rights have in fact been violated." *United States v. Salvucci,* 448 U.S. 83, 85 (1980).

The burden of proof is on a defendant to demonstrate that he has a reasonable expectation of privacy. *Minnesota v. Carter,* 525 U.S. 83 (1998); *Caymen, 404 F.3d at 1199.* However, no person can have a reasonable expectation of privacy in an item that has been

- 4 -

abandoned. *Hester v. United States,* 265 U.S. 57, 58 (1924). The government must establish by a preponderance of the evidence that a defendant's words and/or conduct would lead a reasonable person to believe the defendant relinquished his property interest in the item seized. *United States v. Basinski,* 226 F.3d 829, 836 (9th Cir. 2000) (*citing United States v. Stephens,* 206 F.3d 914, 917 (9th Cir. 2000)); *see also United States v. Nordling,* 804 F.2d 1466, 1469 (9th Cir. 1986). The totality of the circumstances are examined with particular focus on explicit denials of ownership and to physical relinquishment of the property. *Basinski,* 226 F.3d at 837 (*citing United States v. Chandler,* 197 F.3d 1198, 1200 (8th Cir. 1999); *United States v. Liu,* 180 F.3d 957, 960 (8th Cir. 1999); *United States v. Ramos,* 12 F.3d 1019, 1025 (11th Cir. 1994)); *Nordling,* 804 F.2d at 1469.

In determining whether a person intends to retain a privacy interest in property, a person's words, acts and other objective facts must be examined. *United States v. Jackson,* 544 F.2d 407, 409 (9th Cir. 1976). These three considerations are not conjunctive and words alone which disclaim ownership in property can be sufficient to demonstrate abandonment. *United States v. Burnette,* 698 F.2d 1038, 1948 (9th Cir. 1983) (the defendant's conduct subsequent to words construed as disclaimer of ownership can support a finding that the defendant intended to retain a reasonable expectation of privacy in the object).

The existence of an expectation of privacy "is a threshold standing requirement, and analysis cannot proceed further without its establishment." *United States v. Cruz-Jimenez,* 894 F.2d 1, 5 (1st Cir. 1990). It is a defendant's burden to prove standing. *United States v. Singleton,* 987 F.2d 1444, 1449 (9th Cir. 1993). A defendant cannot by mere pleading alone require the government to go forward with evidence to dispel his claim to standing. Thus, a defendant cannot rely upon the government's lack of such evidence "to discharge his allotted burden of proof, nor may a court overlook a defendant's failure to carry that burden." *Id.* at 1449. Herein, Defendants were afforded an opportunity to meet this burden. BPAs Grayson and Narrance were called and cross-examined. The questioning of BPAs Grayson and Narrance did not touch upon the issue of standing.

A defendant is not obligated to testify regarding standing. However, if "a defendant

- 5 -

1 testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his
2 testimony may not thereafter be admitted against him at trial on the issue of guilt unless he
3 makes no objection." *Simmons v. United States,* 390 U.S. 377, 394 (1968). Defendants herein
4 opted not to testify on the issue of standing. This Court has no evidence[2] before it as to what
5 Defendants were thinking or motivations when they ran away upon seeing BPA Grayson
6 approaching that might otherwise establish a subjective expectation of privacy.

It has long been recognized that:

> abandonment is a question of *intent*. The inquiry should focus on whether *through words, acts or other objective indications,* a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure.

*Nordling,* 804 F.2d at 1469 (*citing United States v. Cella,* 568 F.2d 1266, 1283 (9th Cir. 1977); *Jackson,* 544 F.2d at 409) (*emphasis added).*

The only evidence before this Court is BPA Grayson's testimony that Defendants ran away from the spot where they had been sitting when they saw him approaching. The reasonable, objective, and more plausible explanation of BPA Grayson's observations of Defendants running away was to put distance between themselves, the marijuana bundles and an approaching law enforcement officer.

## III. CONCLUSION

Defendants unequivocally relinquished any proprietary or possessory interest in the marijuana bundles when they ran away from the immediate area where it was located. Defendants have no standing to object to the seizure of the marijuana bundles and their

---

[2]To have standing, a defendant must demonstrate *actual standing*, i.e., assert during the motion to suppress either a proprietary interest in the premises searched or a possessory interest in the articles seized. *United States v. Prueitt,* 540 F.2d 995, 1004-1005 (9th Cir. 1976). Assertions in pleadings or argument to the court is insufficient. "First, without an initial ruling or finding of standing *based on the evidence,* there is nothing to contradict as there are no '*facts*' yet established...Second, if the court does not rule *on the evidence*, the defendant in some instances would never have to prove that 'his own Fourth Amendment rights were violated by the challenged search and seizure.'" *Singleton,* 987 F.2d at 1449 (*quoting Rakas v. Illinois,* 439 U.S. 128, 130-131 n. 1 (1978))(emphasis added).

ultimate introduction into evidence at trial.

## IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court deny as moot Defendant Rivera-Baltazar's Motion For Joinder In Motion To Suppress The [sic] Evidence (Doc. 82) in Defendant Alvarez' Motion To Suppress Evidence (Doc. 73). The Magistrate Judge further recommends that:

(1) in light of Defendants Alvarez' and Ramirez' concession that they have no proprietary nor possessory interest in the marijuana, deny Defendant Alvarez' Motion To Suppress Evidence (Doc. 73) and Defendant Ramirez' Motion For Joinder In Motion To Suppress Evidence (Doc. 77); or, alternatively,

(2) in light of Defendants Alvarez' and Ramirez' actions of abandonment of the marijuana bundles, deny Defendant Alvarez' Motion To Suppress Evidence (Doc. 73) and Defendant Ramirez' Motion For Joinder In Motion To Suppress Evidence (Doc. 77).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served a copy of this Report and Recommendation. If objections are filed, parties should use the following case number: **CR 10-01245-TUC-JMR**.

Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver of the right to review.

DATED this 2nd day of November, 2010.

_____
Héctor C. Estrada
United States Magistrate Judge