IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Julio Rivera-Baltazar, Santos Alvarez, Jr.,<br>Guadalupe Fermin Ramirez,<br><br>    Defendants. | CR 10-01245-TUC-JMR(HCE)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendant Alvarez' Motion In Limine To Exclude The Testimony Of Agent Stephen Edmison And Request For *Daubert* Hearing (Doc. 72); Defendant Ramirez' Motion For Joinder In Motion *In Limine* To Exclude The Testimony Of Stephen Edmison And Request For *Daubert* Hearing (Doc. 75); Defendant Rivera-Baltazar's Motion For Joinder In Motion In Limine To Exclude Testimony From Stephen Edmison (Doc. 83)[1]; Defendant Alvarez' Motion In Limine To Exclude The Testimony Of Agent Francisco Gonzalez And Request For *Daubert* Hearing (Doc. 88); Defendant Ramirez' Motion For Joinder In Motion *In Limine* To Exclude The Testimony Of Agent Francisco Gonzalez And Request For *Daubert* Hearing (Doc. 94). The Government filed a Response To Defendant's Motion In Limine To Exclude The Testimony Of Agent Stephen Edmison (Doc. 86); and Response To Defendant's Motion In Limine To Exclude The Testimony Of Agent Francisco Gonzalez (Doc. 105).

---

[1]Defendant Rivera-Baltazar pleaded guilty on October 8, 2010 and is pending sentencing before the District Court on March 7, 2011. Consequently, Defendant Rivera-Baltazar is no longer a party to Defendant Alvarez' Motion In Limine To Exclude The Testimony Of Agent Stephen Edmison And Request For *Daubert* Hearing (Doc. 72).

Defendant Alvarez' Motion In Limine To Exclude The Testimony Of Agent Stephen Edmison And request For *Daubert* Hearing (Doc. 72) and Motion In Limine To Exclude The Testimony Of Agent Francisco Gonzalez And Request For *Daubert* Hearing (Doc. 88), came on for a *Daubert* hearing on October 18, 2010.[2] Border Patrol Agents Steven[3] Edmison and Francisco Gonzalez testified (hereinafter "Edmison at p. _" and "Gonzalez at p._") for the Government. Transcript of the October 18, 2010 evidentiary hearing was ordered by the Magistrate Judge, filed on October 28, 2010 (Doc. 115), and is forwarded to the District Court for review.

## I. PROCEDURAL BACKGROUND

The Government, pursuant to F.R.Crim.P. 16(a)(1)(G), filed Notice of Expert Testimony (Doc. 67) which included, among others, Border Patrol Agent (hereinafter "BPA") Edmison's and BPA Gonzalez' names and expected testimony. The Government's Notice prompted Defendant Alvarez, joined by Defendant Ramirez, to file a Motion In Limine To Exclude The Testimony Of Agent Stephen Edmison And Request For *Daubert* Hearing (Doc. 72) and Motion In Limine To Exclude the Testimony Of Agent Francisco Gonzalez And Request For *Daubert* Hearing (Doc. 88). The Government concedes that "in an abundance of caution" BPA Edmison and Gonzalez were noticed as expert witnesses but they will not testify as such. (October 18, 2010 Transcript, p.8). Rather, they are percipient witnesses to observations made on May 3, 2010 when Defendants Alvarez and Ramirez were arrested. (*Id.* at pp. 8-10).

Defendants Alvarez and Ramirez maintain that BPA Edmison and Gonzalez will testify as experts to facts that identify Defendants as having possessed 120 kilograms of

---

[2] On October 18, 2010, the Court, after hearing argument from counsel, held a *Daubert* hearing, thus, that portion of Defendants' Motions requesting a *Daubert* hearing has been granted.

[3] Agent Edmison's first name is spelled: "Stephen" in Defendants' and the Government's briefs; however, the transcript of the October 18, 2010 hearing indicates his first name is spelled: "Steven."

- 2 -

bundled marijuana.

The Magistrate Judge relies on the facts as outlined in the Court's Report and Recommendation (Doc. 102) regarding Defendants' Motion to Sever.

**II. TESTIMONY**

BPA Edmison has worked with Border Patrol for 14½ years. (Edmison at p. 27). He was paired for 5 months with a senior journeyman Border Patrol agent experienced in footprint identification and tracking. (*Id.* at pp. 27-28). Otherwise, his training in identifying footprints is a matter of ongoing experience in his daily work. (*Id.* at pp. 29-30). BPA Edmison's main method of discerning footprints is to track incursions in the environment. (*Id.* at pp. 28, 31-32).

BPA Edmison first encountered Defendants after they had been detained by BPA Grayson near a rifle range on May 3, 2010. (*Id.* at pp. 34-35). He observed the shoes Defendants were wearing and went to an area where BPA Grayson had first observed Defendants run from. (*Id.* at 34). After BPA Edmison had Defendants show him the soles of their shoes, he went to a site where bundles of marijuana had been found. (*Id.* at p. 35). BPA Edmison cannot recall whether all Defendants were wearing the same type of shoes. (*Id.* at p. 36). BPA Edmison concluded that Defendants' footprints were associated with the bundles of marijuana based upon his backtracking footprints near the marijuana to where BPA Grayson had first observed the Defendants. (*Id.* at pp. 36, 46-48).

BPA Edmison: (1) did not make notations about Defendants' footwear (*Id.* at pp. 45-46): (2) did not take photos of Defendants' shoes (*Id.* at pp. 46, 61); (3) relied on his memory of the shoes worn by Defendants (*Id.* at p.46); (4) does not recall the footwear worn by Defendant Alvarez (*Id.* at p. 48); (5) does not recall where in the field cell-phone photos of footprints on the ground were taken (*Id.* at pp. 51, 53); (6) did not compare cell-phone photos of footprints on the ground with Defendants' footwear (*Id.* at p. 54); (7) did not retain Defendants' shoes (*Id.* at p. 60); and (8) did not sketch Defendants' shoes (*Id.* at p. 61). The nearest footprints he ascribes to Defendants were 5 yards to the west of the location where the marijuana bundles were found. (*Id.* at pp. 47-48).

1   Moreover, BPA Edmison: (1) does not have any training in forensic identification (*Id.* at p. 55); (2) has never testified as an expert (*Id.*); (3) is not aware if there is a discipline for excluding one footprint from another (*Id.* at pp. 55-56) ; (4) has never referred to any writing relating to identification of footprints (*Id.* at p.56); and (5) readily acknowledges that identification of footprints is not an exact science (*Id.* at p. 59).

BPA Gonzalez, who has been with Border Patrol for 9½ years (Gonzalez at p.89), testified as follows regarding his experience with marijuana bundled in burlap and rope: (1) marijuana bundled in burlap and exposed for a period of time will appear sun-bleached, fuzzy, and dusty (*Id.* at pp. 92, 94); (2) burlap-bundled marijuana exposed for a period of time will evidence rope that is lighter and faded (*Id.*); and (3) recently-smuggled bundled marijuana is tied tighter with darker and un-frayed rope with crisp knots (*Id.* at 93). BPA Gonzalez testified that the bundles confiscated in the instant case evidenced tape that retained adhesiveness, was not dried nor brittle. (*Id.* at p. 96). Moreover, the burlap and rope was still in good condition, and the marijuana maintained its packaging. (*Id.* at pp. 96-97). In BPA Gonzalez' opinion, the marijuana bundles were still "fresh" and had been exposed to the elements no more than a week, but he cannot say how long the marijuana bundles were underneath the tree where they were found. (*Id.* at pp. 97, 115, 116).

## III. ANALYSIS

### A.   Rule 702 of the Federal Rules of Evidence

The requirements for testimony by an expert are established by Rule 702 of the Federal Rules of Evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702; *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The trial court must apply a

- 4 -

reliability analysis to an expert's opinion, which must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

*Daubert* sets forth a non-exclusive list of factors for consideration regarding the reliability of principles and methods to be employed by an expert: (1) whether the technique or theory can be objectively tested, or whether it is a subjective, conclusory approach whose reliability cannot be assessed; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards and controls; and (5) whether the technique has been generally accepted in the scientific community. *Daubert,* 509 U.S. at 593-94.  *See also* Fed.R.Evid. 702, advisory committee's note to 2000 Amendment.  Herein, BPA Edmison and Gonzalez do not adhere to the aforesaid methodology. They proffer only their subjective experience as the sole and primary basis for concluding that, respectively, the footprints are ascribable to Defendants and that the marijuana bundles are fresh and of recent placement in the desert. Consequently, neither BPA Edmison nor Gonzalez qualify as experts.

### B. Rule 701 of the Federal Rules of Evidence

A witness not testifying as an expert may testify:

> in the form of opinions or inferences limited...to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701. BPA Edmison and Gonzalez are not testifying as expert witnesses, but rather as percipient witnesses to observations made in the field where Defendants and marijuana were found. Testimony by BPA Edmison regarding his observation of footprints ascribed to Defendants near marijuana bundles and BPA Gonzalez' opinion of the recency of seemingly abandoned marijuana bundles, is helpful to a clearer understanding regarding Defendants' alleged possession of the marijuana bundles. BPA Edmison's and Gonzalez' testimony is not based on scientific, technical, or specialized knowledge within the scope of

1  Fed.R.Evid. 702.

2  The gravamen of Defendants' opposition to BPA Edmison's testimony regarding his
3  ability to ascribe to Defendants footprints found near the marijuana bundles is that it tends
4  to identify Defendants as the possessors of that marijuana. (October 18, 2010 Transcript, pp.
5  10-11). Defendants in the *Daubert* hearing conducted herein, have in essence sought a
6  judicial determination of the admissibility of identification evidence. *See e.g., Watkins v.
7  Sowders*, 449 U.S. 341, 349 (1981); *United States v. Davenport*, 753 F.2d 1460, 1462 (1985).
8  Determinations of the reliability of identification testimony is traditionally entrusted to the
9  jury. *Watkins*, 449 U.S. at 347; *United States v. Jones*, 84 F.3d 1206, 1210 (9th Cir.
10 1996)(jury determines reliability of identification testimony when not "very substantial
11 likelihood of irreparable misidentification")(*quoting Manson v. Brathwaite*, 432 U.S. 98, 116
12 (1977)).

13 BPA Edmison's reliance on his memory of Defendants' footwear and failure to make
14 notations and sketches of Defendants' footwear; failure to take photos of Defendants'
15 footwear; failure to retain Defendants' footwear; failure to recall the location where field
16 cell-phone photos of Defendants' footprints were taken; failure to compare Defendants'
17 footwear to footprints found in the field; failure to recall the type of footwear worn by
18 Defendants; and the nearest location of defendants' alleged footprints to the marijuana
19 bundles, all go to the weight of the evidence: thoroughness and reliability of BPA Edmison's
20 testimony that footprints found were Defendants'.  Likewise, BPA Gonzalez' testimony
21 regarding how "fresh" the marijuana bundles were and how long they had been exposed to
22 the elements also goes to the weight of the evidence: the contemporaneity of Defendants'
23 presence to the marijuana. "[C]ross-examination has always been considered a most effective
24 way to ascertain truth." *Watkins*, 449 U.S. at 349 (footnote omitted). It can effectively expose
25 suggestive circumstances and questionable reliability. *Williams v. Stewart*, 441 F.3d 1030,
26 1039 (9th Cir. 2006).

27 **IV. CONCLUSION**

28 Government witnesses, BPA Edmison and Gonzalez, are not sufficiently qualified to

testify respectively as experts regarding footprint identification or recent stagnancy of marijuana and marijuana bundles, under Fed.R.Evid. 702. They are, however, percipient witnesses capable of testifying regarding their opinions or inferences rationally based on their respective perceptions in the investigation of Defendants under Fed.R.Evid. 701.

## V. RECOMMENDATION

After review of the record in this matter, the Magistrate Judge recommends that the District Court:

(1) deny Defendant Alvarez' Motion In Limine To Exclude The Testimony Of Agent Stephen Edmison (Doc. 72) and Defendant Ramirez' Motion For Joinder In Motion In Limine To Exclude The Testimony Of Stephen Edmison (Doc. 75);

(2) deny Defendant Rivera-Baltazar's Motion For Joinder In Motion In Limine To Exclude testimony From Agent Edmison (Doc. 83) as moot; and

(3) deny Defendant Alvarez' Motion In Limine To Exclude The Testimony Of Agent Francisco Gonzalez (Doc. 88) and Defendant Ramirez' Motion For Joinder In Motion In Limine To Exclude The Testimony Of Agent Francisco Gonzalez (Doc. 94).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. If objections are filed, parties should use the following case number: **CR 10–1245-TUC-JMR**

Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver of the right to review.

DATED this 3rd day of November, 2010.

_____
Héctor C. Estrada
United States Magistrate Judge